IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


ANTONIO KNIGHT,
    Petitioner,

vs.                                            Case No.: 4:05cv37/MMP/EMT

JAMES V. CROSBY, JR.,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Docs. 9, 10). Petitioner filed a reply (Doc. 12).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is undisputed by the parties. Petitioner was charged with one count of aggravated stalking, which allegedly occurred between December 26, 2000 and March 17, 2001 (Doc. 10, Ex. A). After a jury trial, Petitioner was found guilty on October 11, 2001 and sentenced to ten years as a habitual violent felony offender (*id.*, Exs. B, C). Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal (First DCA), which affirmed per curiam without opinion on May 21, 2003 (*id.*, Exs. D, E; Doc. 1 at 2). Knight v. State,

846 So. 2d 511 (Fla. 1st DCA May 21, 2003) (Table). The mandate was issued on June 6, 2003. Knight v. State, Case No. 1D01-5014, Florida First District Court of Appeal Docket, Docket Entry dated June 6, 2003. On August 14, 2003, Petitioner moved for postconviction relief pursuant to Fla. R. Crim. P. 3.850 in the Circuit Court for Leon County, Florida (*id.*, Ex. F at 151, 166; Doc. 1 at 2), and the court denied Petitioner's motion after an evidentiary hearing on December 1, 2003 (Doc. 10, Ex. F at 180; Doc. 1 at 3). Petitioner appealed to the First DCA, and the appellate court affirmed per curiam without opinion on June 7, 2004, with the mandate issuing June 23, 2004 (Doc. 10, Exs. G, J, K). Knight v. State, 875 So. 2d 1243 (Fla. 1st DCA June 7, 2004) (Table).

Petitioner filed the instant habeas action on January 26, 2005 (Doc. 1 at 6). Respondent concedes that Petitioner's action is timely and that Petitioner has exhausted his state court remedies (Doc. 9 at 5–8).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
   (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
   (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1] The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002). First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the

---

[1] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–375, 390–399, 120 S. Ct. at 1499–1503, 1511–1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–413, 120 S. Ct. at 1518–1523). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406). A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by

a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent.  Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence."  Section 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).  Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence.  *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record")).

Within this framework, the court will review Petitioner's claim.

III. PETITIONER'S CLAIM

<u>Petitioner was denied effective assistance of counsel, because counsel failed to disclose that a conflict of interest existed, in that the public defender's office represented Petitioner and victim.</u>

(Doc. 1 at 4A–4B).

Petitioner alleges that his counsel was ineffective for failing to withdraw from representing him after counsel discovered a possible conflict of interest (*id.*). While counsel was representing Petitioner, counsel separately represented the alleged victim (and primary state witness) in Petitioner's case (*id.*, Ex. A at 5–6). Additionally, Petitioner alleges that counsel failed to disclose the possible conflict to Petitioner or the court (*id.* at 4A). Thus, Petitioner contends that he was deprived of effective assistance of counsel and also deprived of the ability to knowingly, freely, and voluntarily waive conflict-free counsel (*id.* at 4A–4B).

1. <u>Clearly Established Supreme Court Law</u>

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel, and effective assistance includes a right to counsel unencumbered by conflicting interests. <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); <u>Duncan v. Alabama</u>, 881 F.2d 1013, 1016 (11th Cir. 1989). To violate the Constitution, however, the conflict must be actual, not merely possible, hypothetical, or potential. <u>Cuyler</u>, 446 U.S. at 350, 100 S. Ct. at 1719; <u>Mills v. Singletary</u>, 161 F.3d 1273, 1287 (11th Cir. 1998). "[T]he possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." <u>Cuyler</u>, 446 U.S. at 350; <u>United States v. Novation</u>, 271 F.3d 968, 1010 (11th Cir. 2001).

The Eleventh Circuit applies the following test to determine whether an actual conflict of interest exists:

> [Petitioner] "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence" that favors an interest in competition with that of the defendant. "If [the attorney] did not make such a choice, the conflict remained hypothetical."

Buenoano v. Singletary, 74 F.3d 1078, 1086 n.6 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 520, 136 L. Ed. 2d 408 (1996) (citations omitted) (alteration in original); *see also* Novation, 271 F.3d at 1010–1011.  Petitioner must point to specific instances in the record that demonstrate an actual conflict.  Mills, 161 F.3d at 1287.

If Petitioner demonstrates an actual conflict, he must then prove that the conflict adversely affected counsel's representation.  Cuyler, 446 U.S. at 350, 100 S. Ct. at 1719, Novation, 271 F.3d at 1011.  The Eleventh Circuit interprets "adverse effect" to have three elements: 1) Petitioner "must point to some plausible alternative defense strategy or tactic" that his counsel might have pursued; 2) Petitioner "must demonstrate that the alternative strategy or tactic was reasonable under the facts"; and 3) Petitioner "must show some link between the actual conflict and the decision to forgo the alternative strategy of defense."  Novation, 271 F.3d at 1011 (quoting Freund v. Butterworth 165 F.3d 839, 860 (11th Cir. 1999)).

2.  Federal Review of State Court Decision

Petitioner contends that he was denied effective assistance of counsel because his trial attorney failed to disclose that a possible conflict of interest existed, in that the public defender's office represented both Petitioner and the victim in his case.  Petitioner raised this claim in his Rule 3.850 motion (Doc. 10, Ex. F at 158–63), and it was the sole claim upon which the evidentiary hearing was held.

During the evidentiary hearing, Petitioner's trial counsel, Johnny Devine, testified that during his representation of Petitioner, he discovered that he had signed a notice of appearance for the victim, Nyla Turner, in Turner's DUI case (*id.*, Ex. L at 5–6).  Devine stated that he had signed this notice for another attorney, and when Devine discovered the possible conflict, he had no knowledge of Turner or her case, and he had never spoken to her (*id.*, Ex. L at 6).  Devine contacted the head of the traffic division at the public defender's office, who did not have any knowledge of the DUI case, but it appeared that Turner had taken a plea at the "mass docket sounding" (*id.*, Ex. L at 6–7, 10).  Although Devine did not believe that any conflict existed (since he had never met or spoken to Turner), he testified that he contacted Petitioner via video phone to explain the situation and to ask if Petitioner still wanted Devine to represent him (*id.*, Ex. L at 7–8).  Further, Devine testified that Petitioner told Devine that he did still want Devine to represent him (*id.*, Ex. L at 8).  Although

Devine failed to obtain a written waiver from Petitioner, Devine noted their conversation in his file and spoke with the head public defender, Nancy Daniels (*id.*, Ex. L at 8). On cross-examination, Devine confirmed that he had no contact with Turner prior to speaking with her before the Williams rule hearing in Petitioner's case (*id.*, Ex. L at 13–14). In addition, Devine testified that his knowledge of the victim did not affect his cross-examination of her in Petitioner's case (*id.*, Ex. L at 14–15). He could not use the one thing he did know, her DUI conviction, against her to impeach, because it was not an impeachable offense (*id.*, Ex. L at 15).

At the same hearing, Petitioner testified that Devine never informed him of a possible conflict of interest and never asked him to sign a waiver regarding the possible conflict (*id.*, Ex. L at 16). Petitioner further testified that he became aware of the conflict after his trial (*id.*, Ex. L at 16).

In its order denying relief, the Rule 3.805 court made a credibility determination, finding the testimony of Devine more credible than that of Petitioner (*id.*, Ex. L at 26–27). First, the court found that there was no actual conflict of interest, because Devine had no opportunity to discover anything about her situation other than the fact that she plead out (*id.*, Ex. L at 26). The court found it critically important that Devine did not counsel Turner regarding her plea or even talk with her at all (*id.*, Ex. L at 26). Thus, Devine did not know anything about Turner's DUI case other than what would be contained in a public court file that anyone could see (*id.*, Ex. L at 26–27). Next, the court found that there might have been some appearance of possible conflict, but Devine divulged the possible conflict to Petitioner, and Petitioner accepted Devine's representation nonetheless (*id.*, Ex. L at 26, 27). Finally, the court found that Devine's performance was not affected in any way, either actually or possibly, under the facts presented in the case (*id.*, Ex. L at 27). The trial court's decision was affirmed by the First DCA.

Although the trial court did not specifically cite to any Supreme Court cases, in making its findings it applied this standard: "whether a conflict of interest existed and, if so, whether such conflict adversely affected the lawyer's performance" (*id.*, Ex. L at 25–26). This is the same rule set out in Cuyler. Therefore, the court applied the correct legal rule based on Supreme Court precedent. Petitioner has failed to establish "actual conflict." Furthermore, this court defers to the trial court's factual findings, as Petitioner has not shown by clear and convincing evidence that the

findings were unreasonable. *See* 28 U.S.C. §§ 2254(d)(2), -(e)(1); Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) ("[Section] 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2). Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence.").

In light of the state court record and the Rule 3.850 court's factual findings, this court cannot conclude that the Rule 3.850 court's legal conclusion—that no actual conflict existed and that any possible conflict did not adversely affect Devine's representation of Petitioner—was contrary to or an unreasonable application of Supreme Court law.

Accordingly it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola this 28th day of September 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**